**BOB USELDINGER & SONS, INC., et al.,** judgment creditors, Appellants (C9–91–2065), Judgment Creditors (C9–91–2096),

**Honek Brothers Potato Company, et al.,** judgment creditors, Judgment Creditors (C9–91–2065), Appellants (C9–91–2096),

v.

**Gust HANGSLEBEN, et al.,** Judgment Debtors,

**Insurance Company of North America,** garnishee, Respondent,

**State Farm Fire & Casualty Company,** garnishee, Respondent (C9–91–2065), Garnishee/Defendant (C9–91–2096),

**St. Paul Fire & Marine Insurance Company, garnishee, Respondent.**

Nos. C9–91–2065, C9–91–2096.

Court of Appeals of Minnesota.

April 7, 1992.

Review Granted June 10, 1992.

Michael F. Daley, McConn, Fisher, Olson & Daley, Ltd., Grand Forks, N.D., for Bob Useldinger & Sons, Inc., et al.

Timothy J. McLarnan, Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, for Ins. Co. of North America.

Charles E. Spevacek, Meagher & Geer, Minneapolis, for State Farm Fire & Cas. Co.

Gordon Myerchin, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for St. Paul Fire & Marine Ins. Co.

Considered and decided by PARKER, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

CRIPPEN, Judge.

Seven potato farming entities sued several seed potato suppliers, alleging damages resulting from sale of seed potatoes contaminated with bacterial ring rot. The suppliers included Richard and David Paquin, insured by State Farm, Gust Hangsleben, insured by two other companies, and P & H Farms, a partnership founded by the Paquins and Hangsleben.

The defendant suppliers sought defense and indemnification from their insurers. State Farm agreed to provide a defense, but claimed there was no coverage under its policies. The other insurers denied they had an obligation to defend their insureds.

Suppliers P & H Farms and the Paquins entered into a *Miller–Shugart* settlement with two claimants, the Useldinger corporations. Other claims against these suppliers were determined through trial and are no longer at issue. Supplier Gust Hangsleben

reached a *Miller–Shugart* agreement with all seven claimants.

Actions were initiated to enforce the *Miller–Shugart* settlements against the insurers. Each insurer raised various defenses to the enforceability of the settlements. All the insurers were granted summary judgments based on the language of the policies, and these judgments are at issue on appeal.

## FACTS

### A. *The Parties*

Gust Hangsleben, Richard Paquin, and David Paquin are the founders of P & H Farms, a partnership. P & H Farms raises seed potatoes. Hangsleben had his own seed potato farm separate from P & H Farms, as did the Paquins, who did business as Paquin Potato Company.

Bob Useldinger & Sons, Inc., Greg Useldinger, Inc., Honek Brothers Potato Company, Robert Honek, James Honek, Tri–Mack Potatoes, Inc., and Mack Farms, Inc. grow potatoes.

State Farm Fire & Casualty Company wrote several liability policies covering the Paquins. Insurance Company of North America (INA) and St. Paul Fire & Marine Insurance Company insured Gust Hangsleben.

Third-party defendant State of Minnesota, Department of Agriculture, inspects and certifies seed potatoes. The state is not involved in this appeal.

### B. *The Underlying Litigation*

The Useldinger corporations contracted with Paquin Potato Company for seed potatoes for the crop years 1981 through 1984. Paquin Potato Company supplied the Useldingers with seed potatoes grown by P & H Farms.

In 1983 the Useldingers discovered that seed potatoes supplied by the Paquins were contaminated with a disease known as bacterial ring rot. Ring rot is a contagious disease for which the State of Minnesota has an aggressive eradication program. The Useldingers were able to salvage some of their potato crop, but most of the crop was destroyed.

In 1982 and 1983, P & H Farms sold seed potatoes to Honek Brothers Potato Company, Mack Farms, and Tri–Mack Potatoes, Inc. This seed was also infected with bacterial ring rot. The result was similar to the Useldingers' experience.

The seed potato buyers subsequently commenced actions against the suppliers, alleging breaches of warranties, negligence and strict liability in tort.[1] The suits were consolidated for trial purposes.

In June 1987, P & H Farms, Paquin Potato Company, and the partners of P & H Farms jointly stipulated to the entry of judgment in favor of the Useldingers pursuant to a *Miller–Shugart* settlement. The trial court subsequently ordered judgment against these suppliers in conformity with the settlement.

In October 1987, shortly before trial, Gust Hangsleben entered into a *Miller–Shugart* settlement with all claimants on his individual liability. Judgment was also entered pursuant to this settlement. Claims of Honek Brothers Potato Company, Mack Farms, Inc. and Tri–Mack Potato, Inc. against other suppliers were subsequently determined at trial.

### C. *The Garnishment Proceedings*

The claimants, now judgment creditors, initiated garnishment proceedings against the insurers of the judgment debtors, seeking to enforce the *Miller–Shugart* settlements. The insurers denied that anything was owed to the judgment creditors. The trial court granted the insurers' motions for summary judgment, and the judgment creditors have appealed.

## ISSUES

1. Did the Paquins render coverage under the State Farm policy void by entering *Miller–Shugart* settlements?

---

**1.** The Minnesota Supreme Court, in related litigation, has limited the available theories of recovery to the provisions of the Uniform Commercial Code, Minn.Stat. §§ 336.2–701 to 336.2–725 (1982). *Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990).

2. Did the trial court err in finding coverage excluded by the policies?

3. Does the failure of the *Miller–Shugart* settlements to allocate coverage among the insureds render the settlements unenforceable?

## ANALYSIS

■■■ On review of a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The trial court's summary judgment was based upon its interpretation of the insurance policies. These were decisions of law which this court reviews de novo. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn. 1978).

### I.

■■ State Farm agreed to defend the Paquins and Paquin Potato Company under a reservation of rights. State Farm denied coverage under both its general liability and commercial umbrella policies; it agreed to defend under personal liability umbrella policies issued to Richard and David Paquin.

State Farm contends that since it was providing a defense, the Paquins voided coverage under the State Farm policies by entering into a *Miller–Shugart* settlement. We disagree.

Under *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), the insured does not have an absolute right to protect the insured's own financial interests. *Steen v. Underwriters at Lloyd's, London*, 442 N.W.2d 158, 161 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989). The extent of the insured's rights were enunciated by the Minnesota Supreme Court:

It is *always* in the best interest of the insured to enter into an agreement which completely eliminates the insured's exposure to personal liability for damages and in many cases, by continued denial of fault, damage to the insured's reputation as well. But that fact does not justify

the insured's concession of liability for damages equal to the maximum aggregate limits of its insurance coverage. Only the insurer's denial of the existence of *any* coverage for the claim and the resultant exposure of the insured to liability for the entire amount of any damage award provide a basis for requiring the insurer's right to the insured's cooperation to yield to the insured's need to extricate himself or herself without the insurer's agreement.

*Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865, 872 (Minn.1989) (emphasis in original). The court went on to state:

Ordinarily, when an insurer has acknowledged the existence and applicability of coverage with respect to a pending action, the deprivation of the contractual right to defend and settle the lawsuit attendant upon the execution of a stipulation for settlement prejudices the insurer and voids the policy coverage.

*Id.* at 874.

In this case, however, State Farm never "acknowledged the existence and applicability of coverage with respect to a pending action." State Farm agreed to provide a defense, but it simultaneously asserted various reasons why there was no coverage on liabilities resulting from claims stated against its insureds in the pending proceedings. Significantly, the circumstances here are the same as those in *Miller v. Shugart;* the insurer has not abandoned the insured but has provided a defense, yet the insurer has denied coverage under its policies.

By asserting an absence of coverage, State Farm relinquished its right to completely control the defense of the claims against its insureds. *See Amoco Oil Co. v. Dingwell*, 690 F.Supp. 78, 82 (D.Me.1988), *aff'd sub nom. Travelers Indem. Co. v. Dingwell*, 884 F.2d 629 (1st Cir.1989). As the Eighth Circuit has noted,

Those few cases in which courts have permitted insureds to settle even though their insurers were affording timely defense are cases in which the insurers, while defending, denied any liability under the policies in question.

*Sargent v. Johnson*, 551 F.2d 221, 231 (8th Cir.1977), *cited in Buysse*, 448 N.W.2d at 873–74. This is such a case. Because State Farm never admitted coverage, the Paquins were free to enter a *Miller–Shugart* agreement.

## II.

### A. *The State Farm Policy Exclusion*

The general liability policy and the commercial umbrella policy issued by State Farm contained the following exclusion:

> In consideration of the premium charged, no coverage is provided for claims of consequential loss or damages because of but not limited to:
> A. Failure of seed sold by the insured to conform to the variety or quality specified or to be suitable for the purpose specified.
> B. Failure of seed to conform to the variety or quality specified when sold by the insured in unopened packages, received by the insured from a supplier.
> C. Germination quality of seed.

State Farm contends this exclusion precludes coverage for the claims brought against their insureds. Specifically, State Farm alleges the claims against the judgment debtors arose out of the failure of the seed potatoes to conform to the quality specified.

■ State Farm bears the burden of proving that the exclusion applies. *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.*, 307 Minn. 352, 354, 239 N.W.2d 768, 770 (1976). Exclusions are strictly interpreted against the insurer. *Hennings v. State Farm Fire & Casualty Co.*, 438 N.W.2d 680, 683 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989). Any ambiguities in the policy are to be resolved against the insurer and in accordance with the reasonable expectations of the insured. *Caledonia*, 307 Minn. at 354, 239 N.W.2d at 770.

■ The exclusion expressly refers to the "quality specified." We agree with the Useldingers' claim that "quality specified" more commonly would be read to mean the certified seed potato grade specified in a

sale transaction. It is not evident there is any need to specify that seed potatoes will produce a marketable disease-free crop. The phrase is at least ambiguous and must be strictly interpreted against State Farm.

### B. *The INA Policy Exclusions*

■ The INA policy provided:

> This coverage does not apply:
> (a) To bodily injury or property damage arising out of any act or omission in connection with premises (other than the insured premises) owned, rented, or controlled by any insured.

The INA policy defines "insured premises" to mean

> all residence premises, all premises which the named insured or his spouse owns, rents, or operates as a farm, * * *.

INA argues that Gust Hangsleben has no coverage for liability arising out of potatoes grown on land not identified in the declarations pages of the policy as insured premises. As INA correctly notes, the declarations pages of an insurance policy are a crucial part of the policy. *Seaway Port Auth. of Duluth v. Midland Ins. Co.*, 430 N.W.2d 242, 248 (Minn.App.1988); *see, e.g., Farmers Home Mut. Ins. Co. v. Lill*, 332 N.W.2d 635, 637 (Minn.1983). The P & H Farms property is not listed in the INA declarations pages. However, there is no showing that the ring rot came from crops grown on P & H Farms property but not from the adjacent property owned by Hangsleben. To the contrary, the record shows Hangsleben used his equipment on both his own property and the P & H Farms property. According to the evidence offered, the ring rot may have been spread from Hangsleben's own property to the P & H Farms property.

■ INA also contends there is no liability coverage for the claims against Hangsleben because the business pursuits exclusion provides that the policy does not apply

> to bodily injury or property damage arising out of (1) business pursuits of any insured *except* (i) activities therein which are ordinarily incident to non-business pursuits, and (ii) *farming* or (2) the ren-

dering of, or failing to render professional services.

(Emphasis added.) INA's position is that Hangsleben's involvement in P & H Farms constituted a business pursuit other than farming because Hangsleben was essentially a financial backer and was not involved in the day-to-day operations of P & H Farms.

The terms of the exclusion, in the absence of ambiguity, must be given their plain, ordinary and popular meaning. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The commonly understood definition of the term "farming" does not support INA's contention that Hangsleben was not engaged in farming because he did not regularly work in the enterprise.

█ Finally, the INA policy also contained the following exclusion:

This coverage does not apply:
(m) to property damage to products manufactured, sold, handled or distributed by any insured or work performed by or for any insured, arising out of such products or work or any part thereof * * *.

This exclusion is similar to so-called "work products" exclusions which deny coverage to the insured when the insured's own negligence gives rise to the damage. *See Quality Homes, Inc. v. Bituminous Casualty Corp.*, 355 N.W.2d 746, 749 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 15, 1985); *T.E. Ibberson Co. v. American & Foreign Ins. Co.*, 346 N.W.2d 659, 661–62 (Minn.App.1984).

The judgment creditors argue the damage was not to the insured's product, the seed potatoes, but to the judgment creditors' product, their potato crop. This observation has merit. *See St. Paul Fire & Marine Ins. Co. v. Northern Grain Co.*, 365 F.2d 361, 368 (8th Cir.1966); *St. Paul Fire & Marine Ins. Co. v. Three "D" Sales, Inc.*, 518 F.Supp. 305, 310 (D.N.D. 1981).

The St. Paul Fire policy contains the following business pursuits exclusion:

We won't cover any liability connected with the business, profession or occupation of anyone insured, such as malpractice claims against a doctor. Nor will we cover accidents happening on an insured persons business property. *But we will cover accidents* in and around a 1, 2 or 3 family house held for rental, or *on a farm.*

(Emphasis added.)

The St. Paul Fire policy defines "accident" to mean "anything that causes property damage, personal injury or death without your expecting or intending it." Hangsleben's conduct in growing seed potatoes contaminated with bacterial ring rot constitutes an accident within the policy definition, and the accident occurred on a farm.

St. Paul Fire argues that since Hangsleben's involvement was limited to a commercial transaction for profit, it was not farming. Farming, however, is a commercial transaction engaged in for profit. *See Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn.1990). As we observed in discussing INA's arguments, the occurrence of farming is not destroyed by diminishing personal labor in the enterprise.

### III.

█ State Farm and INA contend the *Miller–Shugart* settlements are unenforceable because they cover all the insureds but do not allocate the damages among the insureds. The insurers rely on *Ebenezer Soc'y v. Dryvit Sys., Inc.*, 453 N.W.2d 545 (Minn.App.1990). *Ebenezer* does not address the issue here, determining only that a settlement does not bind the insurer if it includes uncovered damages and does not allocate parts of the settlement attributable to that damage. In this case the settlement deals singularly with covered damages. We find no basis for judicial rejection of a settlement which leaves to be determined only the contribution share of individual insureds.

### DECISION

Summary judgments for the insurers are reversed and the matter remanded for further trial court proceedings.

Reversed and remanded.