**Joann K. OLSON, Plaintiff and Appellant,**

v.

**UNIVERSITY OF NORTH DAKOTA, Defendant and Appellee.**

**Civ. No. 910404.**

Supreme Court of North Dakota.

June 25, 1992.

Dwain E. Fagerlund (argued), of Dickel, Johannson, Taylor, Rust & Tye, Crookston, Minn., for plaintiff and appellant.

Gary R. Thune (argued), Sp. Asst. Atty. Gen., Bismarck, for defendant and appellee.

LEVINE, Justice.

Joann K. Olson appeals from a district court judgment dismissing her personal injury action against the University of North Dakota [UND]. We affirm.

On December 4, 1986, Olson was injured when she slipped and fell on ice located on a pedestrian walkway at the UND campus. In a complaint dated July 25, 1990, Olson brought this action alleging that UND negligently maintained the pedestrian walkways on campus and that UND's negligence caused her injuries. She sought $200,000 in damages.

In November 1990, UND filed a motion for summary judgment, asserting that sovereign immunity barred Olson's claim. Olson responded that UND was not an arm or instrumentality of the state and that, in any event, UND had waived its immunity by purchasing insurance pursuant to NDCC § 15-10-17(14), through its participation in the North Dakota Insurance Reserve Fund [NDIRF]. UND argued that participation in the NDIRF did not constitute the purchase of insurance and that, in the event its immunity may have been waived by the purchase of insurance, Olson's claim was barred by the three-year statute of limitations under NDCC § 32-12.1-10. Olson argued that the general six-year statute of limitations in NDCC § 28-01-16(5) applied in this case.

The trial court continued the case, pending this court's decision in *Leadbetter v. Rose*, 467 N.W.2d 431 (N.D.1991). In *Leadbetter*, a majority of this court held that UND is an arm of the state entitled to invoke sovereign immunity and that the doctrine of sovereign immunity did not violate the plaintiff's state or federal constitutional rights.

In July 1991, the trial court ordered partial summary judgment in favor of UND. The court ruled that UND was an arm of the state entitled to invoke sovereign immunity and that UND's participation in NDIRF did not constitute the purchase of insurance for purposes of waiving sovereign immunity. The court further ruled that the general six-year statute of limitations governed and that Olson had timely commenced her action. The court determined, however, that there remained a genuine issue of material fact about whether

UND had purchased any liability insurance which would constitute a waiver of its immunity.

In August 1991, UND again moved for summary judgment and submitted an affidavit of UND's legal counsel stating that UND did not have liability insurance in effect on December 4, 1986, which would provide coverage for Olson's personal injury claim. Olson submitted no affidavits or other materials to counter UND's evidence but requested a continuance until she could conduct further discovery regarding the nature and function of the NDIRF.

In September 1991, the trial court denied Olson's discovery request and granted UND's motion for summary judgment, dismissing Olson's claim. The court reaffirmed its earlier order and ruled that no issue of fact existed about whether UND had purchased liability insurance that would cover Olson's claim. The court determined that UND was immune from liability under the doctrine of sovereign immunity and was entitled to summary judgment as a matter of law. Olson has appealed from the judgment of dismissal entered pursuant to the trial court's orders granting summary judgment.

■ The dispositive issue is whether the three-year statute of limitations found in NDCC § 32–12.1–10 or the general six-year statute of limitations found in NDCC § 28–01–16(5) applies in this case.[1] Although Olson asserts that UND cannot challenge the trial court's ruling on the statute of limitations issue because it failed to file a cross-appeal, UND, as the appellee in this case, "is entitled on appeal to attempt to save the judgment by urging any ground asserted in the trial court" without filing a cross-appeal. *Livingood v. Meece,* 477 N.W.2d 183, 188 (N.D.1991).

In order to resolve the statute of limitations issue, it is necessary to analyze the basis for Olson's claim that UND has waived its immunity from suit by participating in the NDIRF. NDCC § 15–10–17(14) provides in pertinent part:

*"Specific powers and duties of board of higher education.* The state board of higher education shall have all the powers and perform all the duties necessary to the control and management of the institutions described in this chapter, including the following:

\* \* \* \* \* \*

"14. To insure itself and its employees and the officers, employees, and students, and any building or other property, real or personal, of any institution under its control against any loss or liability it deems advisable. If the board or any institution under its control purchases insurance pursuant to this subsection, the purchaser shall waive immunity to suit for liability only to the types of insurance coverage purchased and only to the extent of the policy limits of such coverage. . . ."

Olson asserts that UND's participation in the NDIRF constitutes the purchase of insurance for purposes of this statute and that UND has therefore waived immunity up to the extent of its coverage under its policy with the NDIRF. Chapter 15–10 does not define "insurance" or refer to an insurance reserve fund. Olson therefore relies on the definition of "authorized insurance" in NDCC § 32–12.1–07(1) and on the establishment of a political subdivision insurance reserve fund pursuant to NDCC 32–12.1–08,[2] as authority for UND to par-

---

1. Although Olson did not argue the constitutionality of sovereign immunity to the trial court, she invites us to consider the question in this appeal. We decline the invitation, adhering to the principle that an issue, not first presented to the trial court, will not be considered on appeal. *E.g., Hanson v. Williams County,* 452 N.W.2d 313, 315 (N.D.1990); *Gange v. Clerk of Burleigh County District Court,* 429 N.W.2d 429, 432 n. 3 (N.D.1988). We also decline to reconsider this

court's ruling in *Leadbetter, supra,* 467 N.W.2d at 434, that UND is an arm of the state.

2. At the time of Olson's injury in 1986, NDCC 32–12.1–08 provided:

*"Political subdivision insurance reserve fund— Tax levy.*
"1. A political subdivision, other than a school district, may establish and maintain

ticipate in the NDIRF at the time of her 1986 injury. NDCC § 32–12.1–07(1) provided:

"*Authorized insurance.*

"1. The insurance authorized by this chapter may be provided by:

"a. Self-insurance, which may be funded by appropriations to establish or maintain reserves for self-insurance purposes.

"b. An insurance company authorized to do business in this state which the commissioner has determined to be responsible and financially sound, considering the extent of the coverage required.

"c. Any combination of the methods of obtaining insurance authorized in subdivisions a and b."

Olson points out that although Chapter 32–12.1 is directed mainly at the liability of political subdivisions, NDCC § 32–12.1–15(1) also authorized state agencies to purchase liability insurance: "The state or any state agency, bureau, or department may

an insurance reserve fund for insurance purposes, and all political subdivisions including school districts may include in the annual tax levy of the political subdivision such amounts as are determined by the governing body to be necessary for the purposes and uses of the insurance reserve fund. Except in the case of a school district, the tax levy authorized by this section shall not exceed the limitation in section 57–15–28.1. If a political subdivision has no annual tax levy, the political subdivision may appropriate from any unexpended balance in its general fund such amounts as the governing body of the political subdivision shall deem necessary for the purposes and uses of the insurance reserve fund.

"2. Except in the case of a school district, the fund established pursuant to this section shall be kept separate and apart from all other funds and shall be used only for the payment of claims against the political subdivision which have been settled or compromised, judgments rendered against the political subdivision for injuries arising out of risks established by this chapter, or costs incurred in the defense of claims. Payments by a school district for the same purposes shall be made out of the district's special fund as established in section 57–15–14.2."

insure against liabilities provided by this chapter for its own protection and for the protection of any state employee." NDCC § 32–12.1–15(2), which is identical in substance to NDCC § 15–10–17(14), further provided that "[i]f the state or any state agency, bureau, or department shall purchase insurance pursuant to this section, the purchaser shall waive its immunity to suit only to the types of insurance coverage purchased and only to the extent of the policy limits of the coverage." Olson asserts that because this waiver of immunity by state agencies when they obtained insurance coverage from insurance companies or through an insurance reserve fund remained in effect until Chapter 32–12.1 was amended in 1987,[3] UND's purchase of coverage from the NDIRF constituted a waiver of sovereign immunity at the time she was injured in 1986 and her suit is not barred.

We accept, for purposes of argument only, Olson's analysis in arriving at the conclusion that UND's participation in the NDIRF waived its immunity from suit. If

3. Many of the statutes relied upon by Olson have been substantially amended by the legislature since her 1986 injury. For example, NDCC § 32–12.1–15 was amended in 1987, 1989, and 1991. *See* 1987 N.D.Sess.Laws Ch. 351 § 3; 1989 N.D.Sess.Laws Ch. 412 § 4; 1991 N.D.Sess. Laws Ch. 301 § 27. Section 32–12.1–15(1) currently provides that "[n]o purchase of insurance pursuant to this section or participation in a government self-insurance pool may be construed as a waiver of any existing immunity to suit." In addition, the legislature in 1989 enacted Chapter 26.1–23.1, relating to government self-insurance pools. *See* 1989 N.D.Sess.Laws Ch. 359. Section 26.1–23.1–02 currently provides:

"*Government self-insurance pools not insurers.* Any government self-insurance pool organized under chapter 32–12.1 is not an insurance company or insurer. The coverages provided by such pools and the administration of such pools does not constitute the transaction of insurance business. Participation in a self-insurance pool under this chapter does not constitute a waiver of any existing immunities otherwise provided by the constitution or laws of this state."

These subsequent statutory enactments are not applicable to this case.

that analysis is correct, however, it requires us to conclude that the three-year statute of limitations provided in NDCC § 32–12.1–10 is applicable in this case.

The general six-year statute of limitations in NDCC § 28–01–16(5) applies to any injury to the person or rights of another not arising upon contract, "when not otherwise expressly provided." NDCC § 32–12.1–10 expressly provides that "[a]n action brought under this chapter must be commenced within three years after the claim for relief has accrued."

We reject Olson's contention that the three-year statute of limitations applies only to actions against political subdivisions and not to actions against the state or its agencies and institutions, which are expressly excluded from the definition of a "political subdivision" under NDCC § 32–12.1–02(5)(b). Olson's position is not supported by the language used in Chapter 32–12.1 and violates "the cardinal rule of statutory interpretation . . . that the interpretation must be consistent with legislative intent and done in a manner which will accomplish the policy goals and objectives of the statutes." O'Fallon v. Pollard, 427 N.W.2d 809, 811 (N.D.1988).

Chapter 32–12.1, including the three-year statute of limitations provision, was enacted in response to this court's decision in Kitto v. Minot Park District, 224 N.W.2d 795 (N.D.1974), abolishing the doctrine of governmental immunity for political subdivisions in this state. See Fastow v. Burleigh County Water Resource Dist., 415 N.W.2d 505, 508 (N.D.1987). Although Chapter 32–12.1 primarily addressed the liability of political subdivisions, it also authorized the state and its agencies to purchase insurance "against liabilities provided by this chapter" with a resulting waiver of immunity up to the limits of the insurance purchased. NDCC § 32–12.1–15(2). NDCC § 15–10–17(14), which is identical in substance to NDCC § 32–12.1–15(2), appears to have been enacted specifically to authorize the State Board of Higher Education to purchase insurance coverage available to other state agencies. This court has noted that although the provision for waiver of immunity for the state and its agencies is somewhat awkwardly "buried within" the liability of political subdivisions chapter, § 32–12.1–15(2) does "manifest some legislative concern for the victims of state tortfeasors." Patch v. Sebelius, 320 N.W.2d 511, 513 (N.D.1982). Therefore, while titled "Liability of Political Subdivisions," Chapter 32–12.1 also authorized some liability for the state and its agencies and institutions. The chapter's definitions of insurance and, under Olson's argument, its authorization for participation in an insurance reserve fund, applied to both political subdivisions and the state and its agencies and institutions.

The obvious purpose of Chapter 32–12.1 is to limit exposure to potential liability. O'Fallon, supra. The reduced three-year period for commencing an action under the chapter furthers this purpose. O'Fallon, supra. In effect, the three-year statute of limitations is the legislatively imposed quid pro quo for the liability provided by the chapter. Olson cannot skew the intent and thrust of Chapter 32–12.1, by selecting only those provisions that support her quest for compensation, while ignoring other provisions that constitute integral components of the statutory scheme. See generally Production Credit Ass'n of Minot v. Lund, 389 N.W.2d 585, 586–587 (N.D.1986) ["In construing a statutory provision we consider the entire enactment of which it is a part and, to the extent possible, interpret the provision consistent with the intent and purpose of the entire Act."] It would "stand the legislative intent on its head" to conclude that the legislature intended the three-year statute of limitations to apply only to political subdivisions, which Kitto held were not immune to suit, and not to the state and its agencies, which the legislature allowed to voluntarily waive their immunity by purchasing liability insurance pursuant to § 32–12.1–15. O'Fallon, supra. If, as Olson argues, UND's

participation in the NDIRF constitutes the purchase of insurance for purposes of waiving immunity, based upon the provisions of Chapter 32–12.1, then, it follows that the three-year statute of limitations is also applicable to her claim.

There is no dispute in this case that Olson's claim for relief was brought more than three years after her 1986 injury. Accordingly, the district court's dismissal of her claim was proper because her claim was barred by § 32–12.1–10. It is unnecessary to address the other issues raised by the parties.

The judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, JOHNSON and MESCHKE, JJ., concur.