**Mildred SELLIE, Personally and as the personal representative of the Estate of Earl Sellie, Plaintiff and Appellant,**

v.

**NORTH DAKOTA INSURANCE GUARANTY ASSOCIATION, Defendant and Appellee.**

Civ. No. 920118.

Supreme Court of North Dakota.

Dec. 22, 1992.

152

Steven E. McCullough (argued), of Ohnstad Twichell (West Fargo Office), West Fargo, for plaintiff and appellant.

Michael J. Morley (argued), of Morley & Morley, Ltd., Grand Forks, for defendant and appellee.

William D. Schmidt, Bismarck, for amicus curiae ND Trial Lawyers Ass'n. Submitted on brief.

JOHNSON, Justice.

Mildred Sellie, individually and as the personal representative of the estate of Earl Sellie, appeals from a district court judgment dismissing her action to enforce a stipulated judgment against the North Dakota Insurance Guaranty Association [NDIGA]. We reverse and remand with directions.

During September 1985, Mildred, age 74, and her husband, Earl, toured the New England states on a group bus trip operated by Senior Citizens Recreation, Inc. [SCR] to enjoy the fall color. Near the end of the tour on September 25, 1985, the group stopped to spend the night at the Treadway Inn in Saddle Brook, New Jersey. While standing in the lobby during a reception for the group, Mildred was injured when she was struck in the back and knocked over by a device being used by Arlo Oyen, the bus driver, to transport luggage from the bus to the rooms of the bus passengers. As Mildred recalled, she did not see the device that struck her, did not know what the device looked like, and did not know where the device was obtained. However, Mildred learned from other bus passengers that all 46 pieces of the passengers' luggage were piled on the device and that Oyen could not see over or around the device as he was moving it through the lobby. According to Oyen, the device he used "was a standard luggage cart with 4 wheels as opposed to a two wheel cart...." Unloading luggage from the bus and delivering it to the passengers' rooms was part of Oyen's work on SCR trips.

At the time of the accident, SCR was insured under a policy issued by the Transit Casualty Company [TCC]. The bus on which Mildred had been riding, and from which the luggage had been unloaded, was described in the policy as a covered auto. The policy contained the following exclusion from coverage:

"This insurance does not apply to:

\*　　\*　　\*　　\*　　\*　　\*

"8. Bodily injury or property damage resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered auto."

On November 26, 1986, Mildred and Earl sued SCR and Oyen in Burke County District Court seeking damages for injuries caused when Mildred "was struck from behind by a luggage trolley operated by Arlo Oyen, the bus driver and employee of" SCR. SCR tendered the defense of the action to the NDIGA because TCC had become an insolvent insurer. *See* Chapter 26.1–42, N.D.C.C. NDIGA denied coverage under the TCC policy on January 28, 1987, and refused to provide a defense for SCR.

Earl died on July 23, 1987. Mildred, SCR, and Oyen began settlement negotiations. Mildred twice notified NDIGA that settlement negotiations were ongoing, but NDIGA chose not to participate. In June 1990, Mildred, individually and as personal representative of Earl's estate, entered into a settlement agreement with SCR and Oyen entitled "Stipulation for Entry of Judgment." In the stipulation Mildred agreed to dismiss the claims against Oyen,

without prejudice, and SCR agreed to entry of judgment against it for $128,000 to be satisfied "only by pursuing the proceeds" of the TCC insurance policy. The stipulation further recited that "[t]his judgment is intended to have the same effect as the judgment referred to in *Miller v. Schugart* [sic], 316 N.W.2d 729 (Minn.1982)."[1] On June 6, 1990, judgment was entered in Burke County against SCR as stipulated.

Also in June 1990, Mildred, individually and as personal representative of Earl's estate, commenced this declaratory judgment action against NDIGA, seeking a declaration that the TCC policy provides coverage for the damages awarded in the Burke County judgment and that NDIGA is estopped from contesting the issues of liability and damages. In December 1991, the trial court denied Mildred's motion for partial summary judgment. The court ruled that, as a matter of law, Chapter 26.1–42, N.D.C.C., allowed NDIGA to contest coverage under the TCC insurance policy. The court also ruled that the term "hand truck" in the TCC policy "is ambiguous as a matter of law and requires factual determinations *when also used in the context of the sentence of exclusion.*" [Emphasis in original].

At trial, both parties presented expert opinion testimony about the reasonableness of the $128,000 settlement agreement. NDIGA also presented testimony of an insurance industry expert who stated that the term "hand truck" has an "intended meaning" in the insurance industry and that a "hand truck" "consists of two wheels and a handle in which ... you can push your baggage along the way, whatever you're carrying." The expert further testified that a "hand truck" was not intended in the insurance industry to include a "four-wheel luggage cart" because it has more than "two wheels, and it doesn't have handles that are readily usable."

The trial court dismissed Mildred's action. The court determined that the device that struck Mildred was not a "hand truck," reasoning:

"The policy provided an exclusion for any injury by a mechanical device not attached to the bus. The court finds the offending device here was not attached to nor a device integral to the function and purpose of the bus. The court finds the device was not a hand truck, a hand truck being an exception to the exclusion, i.e., at the time of Mrs. Sellie's injury, the offending transporting cart was an excluded device. From those facts and applying the policy provisions, the court concludes that the insolvent insurer's policy did not provide coverage for this injury."

The trial court also commented that the settlement agreement was merely a contract between the parties, that the parties were "free to adopt a choice of laws," and that "their adoption of the Minnesota approach is their decision." The court determined, however, that the Burke County judgment was voidable

"because the judgment purports to be for both claims of Mr. Sellie and Mrs. Sellie. No differentiation is made between the two claims; no denomination or award is made for two entirely distinct claims.

"Recall that no Rule 25 substitution was made after Mr. Sellie died. His cause of action survived under Section 28–01–26.1. The failure to substitute a party within 90 days of Suggestion of Death on the Record should result in a dismissal of the claim. 7c Wright and Miller, Federal Practice and Procedure, Sec. 1955. Apparently that process can be avoided by not filing the necessary document under Rule 25.

"But even if that be so, the judgment obtained here is voidable because it fails to differentiate the settled claims. Being so infirm, NDIGA had every right to challenge the judgment in this action.

"In answer the plaintiff attempted to prove that the whole $128,000 was a viable award to her. That may well be, but the question of the amount awarded on the consortium claim would be unresolved.

1. *Miller v. Shugart,* 316 N.W.2d 729 (Minn. 1982).

"Therefore, the court holds that the plaintiff, while substantiating her damages at $128,000 has failed to avoid the infirmities of the judgment itself as to Mr. Sellie's claim."

Mildred has appealed.

I

■ Mildred asserts that NDIGA should be estopped from contesting coverage because it had totally abandoned its insured, SCR, and breached its duty to defend. Under these circumstances, we do not believe principles of estoppel prevent NDIGA from contesting coverage under the TCC insurance policy.

The stipulation between Mildred and SCR specifically provided that the "judgment is intended to have the same effect as the judgment referred to" in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982). In that case, the injured plaintiff settled with the insured car owner and driver and had a judgment entered for a stipulated sum while the insurer was litigating whether coverage existed for both the insured car owner and the driver. The stipulated judgment provided that it could be collected only from proceeds of any applicable insurance with no personal liability to defendants. After coverage was found to exist, the plaintiff started a garnishment action against the insurer to collect on the stipulated judgment. The Minnesota Supreme Court affirmed the recovery of the stipulated judgment up to the policy limits, concluding that such a settlement agreement reduced to judgment is enforceable against the insured if: (1) the insurer receives notice of the agreement; (2) the agreement is not the result of fraud or collusion; and (3) the agreement is reasonable.

Mildred asserts that NDIGA should be estopped from contesting coverage because, unlike the insurer in *Shugart*, NDIGA totally abandoned SCR in this case. It is true that in *Miller v. Shugart*, unlike here, the insurer commenced a declaratory judgment action shortly after the accident to determine the coverage question and also provided separate counsel, at its own expense, to represent the insured and the

driver. In approving the procedure used by the insured, however, the court stated:

"This is not to say that Milbank's position is enviable. As the trial court observed, it had 'serious doubts about the propriety of the procedure whereby the insurer is placed in a "no-win" situation as was done here.' If the insurer ignores the 'invitation' to participate in the settlement negotiations, it may run the risk of being required to pay, even within its policy limits, an inflated judgment. On the other hand, if the insurer decides to participate in the settlement discussions, ordinarily it can hardly do so meaningfully without abandoning its policy defense. Nevertheless, it seems to us, if a risk is to be borne, it is better to have the insurer who makes the decision to contest coverage bear the risk. *Of course, the insurer escapes the risk if it should be successful on the coverage issue, and, in that event, it is plaintiff who loses." Id.* at 734. [Emphasis added].

Although *Miller v. Shugart* did not involve an abandoned insured, we find no indication in subsequent Minnesota case law that coverage defenses are lost to an insurer who has abandoned the insured. In fact, Justice Simonett, who authored *Miller v. Shugart*, has recently noted that "[i]n an authentic *Miller–Shugart* settlement, the insurer has denied all coverage, and the abandoned insured, left on its own, agrees with the plaintiffs that judgment in a certain sum may be entered against it in return for the plaintiffs releasing the insured from any personal liability." *Buysse v. Baumann–Furrie & Co.*, 481 N.W.2d 27, 29 (Minn.1992). It appears from our review of Minnesota case law on *Miller v. Shugart* settlements that an insurer who has totally abandoned an insured may still contest coverage under the policy in a later action to collect on the stipulated judgment. *See Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277 (Minn.1990); *Bob Useldinger & Sons, Inc. v. Hangsleben*, 483 N.W.2d 495 (Minn.Ct.App.1992); *Brownsdale Co-op. Ass'n v. Home Ins. Co.*, 473 N.W.2d 339 (Minn.Ct.App.1991); *Ebenezer*

*Soc. v. Dryvit Systems, Inc.,* 453 N.W.2d 545 (Minn.Ct.App.1990); *Hartfiel v. McLennan,* 430 N.W.2d 215 (Minn.Ct.App. 1988). Although in *Brownsdale Co-op. Ass'n, supra,* 473 N.W.2d at 341, the court ruled that an insurer who breached its duty to defend the insured was not entitled to notice of the settlement, the insurer was still entitled to challenge coverage under the insurance policy.

As the trial court noted, Mildred was free to stipulate that Minnesota law would apply. *See Snortland v. Larson,* 364 N.W.2d 67, 69 (N.D.1985); *Am. Hardware Mutual Ins. Co. v. Dairyland Ins. Co.,* 304 N.W.2d 687, 689 n. 1 (N.D.1981). But having agreed to follow *Miller v. Shugart* in the stipulated settlement, Mildred must accept what she may deem the unfavorable, as well as the favorable, aspects of that procedure. *Cf. Olson v. University of North Dakota,* 488 N.W.2d 386, 390 (N.D. 1992) ["Olson cannot skew the intent and thrust of Chapter 32–12.1, by selecting only those provisions that support her quest for compensation, while ignoring other provisions that constitute integral components of the statutory scheme."] NDIGA has the same right that the insolvent insurer, TCC, would have had to contest coverage. *See* § 26.1–42–05(1)(b), N.D.C.C. We conclude that NDIGA was not estopped from contesting coverage under the insurance policy in this case. *See, e.g., Ala. Hosp. Ass'n Tr. v. Mut. Assur. Soc.,* 538 So.2d 1209, 1216 (Ala.1989); *McCraney v. Fire & Cas. Co. of Conn.,* 182 Ga.App. 895, 357 S.E.2d 327, 328 (1987); *Fireman's Fund Ins. Co. v. Rairigh,* 59 Md.App. 305, 475 A.2d 509, 514–16 (1984); *but see, e.g., Aetna Cas. and Sur. v. Prestige Cas. Co.,* 195 Ill.App.3d 660, 142 Ill.Dec. 689, 692, 553 N.E.2d 39, 42 (1990); *Professional Off. Bldgs. v. Royal Indem.,* 145 Wis.2d 573, 427 N.W.2d 427, 431 (Ct.App.1988).

## II

Mildred asserts that the trial court erred in determining that the TCC insurance poli-

cy did not provide coverage for her injury. We agree.

Determining the legal effect of an insurance contract is generally a question of law for a court to decide. *Continental Western Ins. v. The Dam Bar,* 478 N.W.2d 373, 374 (N.D.1991). On appeal, we will independently examine and construe the insurance policy to determine whether the trial court erred in its construction. *Aid Insurance Services, Inc. v. Geiger,* 294 N.W.2d 411, 413 (N.D.1980). In interpreting an insurance contract, we look first to its language and, if the intent is apparent from its face, there is no room for construction. *Stuhlmiller v. Nodak Mut. Ins. Co.,* 475 N.W.2d 136, 138 (N.D.1991). If a policy provision is ambiguous, the mutual intention of the parties may be ascertained from parol evidence. *Walle Mut. Ins. Co. v. Sweeney,* 419 N.W.2d 176, 180 (N.D. 1988). An ambiguity exists when good arguments can be made for either of two contrary positions as to the meaning of the term in the document. *Heitkamp v. Milbank Mut. Ins. Co.,* 383 N.W.2d 834, 836 (N.D.1986). The determination of whether an insurance contract is ambiguous is a question of law for a court to decide. *Id.*

The TCC insurance policy excluded coverage for "[b]odily injury or property damage resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered auto." The policy clearly extends liability coverage to bodily injury sustained during the movement of property when the movement is being accomplished by means of a "hand truck." The policy coverage in this case depends on whether the device used by Oyen was a "hand truck." [2]

The term "hand truck" is not defined in the policy. A "hand truck" is defined in Webster's New Collegiate Dictionary at p. 520 (1973) as "a small hand-propelled truck." Webster's Third New International Dictionary at p. 1028 (1971) similarly

---

**2.** The TCC insurance policy provided:

"A. WE WILL PAY.

"1. We will pay all sums the insured legally must pay as damages because of bodily

injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."

defines it as "a small hand-propelled truck or wheelbarrow." These dictionary definitions also indicate that the term "hand truck" usually refers to a two-wheeled device, but the number of wheels on the device is not determinative of whether it constitutes a "hand truck." *See Romenici v. Trumbull Electric Manufacturing Co.,* 145 Conn. 691, 146 A.2d 416, 417 (1958) [describing "hand trucks" as "four-wheeled vehicles ... propelled by means of a handle at one end"]; *Hack v. New York, C. & S.L.R.R. Co.,* 27 Ill.App.2d 206, 169 N.E.2d 372, 375 (1960) [referring to "4–wheeled hand trucks"]; *Allen v. Travelers Insurance Company,* 124 So.2d 367, 371 (La.Ct. App.1960) [referring to a "two-wheeled hand truck or 'dolly' "]; *State v. Webb,* 527 S.W.2d 728, 729 (Mo.Ct.App.1975) [referring to a "6 wheel hand truck or dolly"]; *Pate v. St. Louis Ind. Pack. Co., Div. of Swift & Co.,* 428 S.W.2d 744, 747 (Mo.Ct. App.1968) [referring to a "wheelbarrow type hand-truck"]; *Dewey v. A.F. Klaveness & Co.,* 233 Or. 515, 379 P.2d 560, 561 (1963) [referring to a "three-wheeled hand truck"]. Although these cases do not construe the meaning of "hand truck" in an insurance policy, they demonstrate that the ordinary, usual, and commonly accepted meaning of the term has nothing to do with the number of its wheels.

NDIGA asserts that it is the failure of the dictionary definitions to place "any limitation on the number of wheels of a hand truck" that creates the ambiguity in the term, and that the trial court, therefore, properly allowed the admission of expert opinion evidence that a "hand truck" was intended in the insurance industry to mean a two-wheeled device, rather than a "four-wheel luggage cart." This argument is flawed in several respects.

 First, a term in an insurance policy should be construed "to mean what a reasonable person in the position of the insured would think it meant." *Haugen v. Auto–Owners Insurance Co. of Lansing,* 191 N.W.2d 274, 279 (N.D.1971). When a contract uses words that have an ordinary meaning, extrinsic evidence should not be used to show that the words were used in some other sense. *Embden State Bank v. Boyle,* 50 N.D. 573, 196 N.W. 820, 822 (1923). If TCC had intended to restrict the meaning of "hand truck" to a two-wheeled device, it could have said so in the policy, thereby notifying the insured of the variance from the normal definition. *See Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208, 216–17 (N.D.1979).

 Moreover, an insurance policy must be interpreted to give effect to the mutual intention of the parties. *See Walle Mut. Ins. Co. v. Sweeney, supra.* There is no evidence in the record that the insured, SCR, was aware of an insurance industry practice, custom, or usage limiting "hand truck" to a two-wheeled device. Nor was it shown that such a customary usage is commonly known outside of the insurance business. When a custom or practice of the insurance business is not known to the purchaser of insurance and not shown to be commonly known outside of the insurance business itself, a court cannot hold that the custom is effective between the contracting parties. *See Nilsen v. Mutual Marine Office, Inc.,* 428 F.Supp. 1375, 1381 (D.Ct. Mass.1977). Custom cannot be used to prove the meaning of words and phrases, unless all parties are chargeable with knowledge of the custom. *Valley Nat'l Bank v. Cotton Growers Hail Ins.,* 155 Ariz. 526, 747 P.2d 1225, 1228 (Ct.App. 1987). The Arizona Supreme Court explained in *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, 1135, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982), that when a dispute is between an insurer and insured and not between two insurers, a court is "not concerned with what the 'commercial customs' are in the insurance industry, but rather, what the ordinary person's understanding of the policy would be.... [I]n construing the meaning of an insurance policy, the language used should be viewed from the standpoint of the average layman who is untrained in the law or insurance." We do not choose to encourage testimony by insurance "experts" as a basis for resolving such questions. To the extent that the term "hand truck" can be considered ambiguous, the ambiguity should be construed

against the insurer. *See* § 9–07–19, N.D.C.C.[3]

The term "hand truck" as used in the TCC policy simply means a small hand-propelled device used for moving property. It is not a "technical" term. *See* § 1–02–03, N.D.C.C. For purposes of this policy, the function performed should take precedence over any mechanistic description. Here, Oyen, the bus driver, was performing his duty of unloading the bus and moving the passengers' luggage to their rooms. Oyen's unloading of the luggage from the bus was a "use" of the bus and, we believe, this use "arose out of the inherent nature" of the bus. *Milbank Mut. Ins. Co. v. Dairyland Ins. Co.*, 373 N.W.2d 888, 893 (N.D.1985). That the device used by Oyen had four wheels rather than two and was used to transport 46 pieces of luggage does not change its character as a hand-propelled device for moving property. We conclude that the device constituted a "hand truck" within the meaning of the exception to the exclusion from liability in the TCC insurance policy. The incident resulting in Mildred's injuries was covered by the TCC policy.

### III

■ NDIGA asserts that there are numerous irregularities with the Burke County judgment, and it is void and unenforceable. NDIGA claims that the judgment is defective because it awards damages to Mildred individually and as personal representative of Earl's estate despite the lack of a formal substitution of parties. (Rule 25, N.D.R.Civ.P.) According to NDIGA, the failure to substitute the personal representative of Earl's estate, as plaintiff after his death, should have resulted in a dismissal of Earl's action.

■ There was no motion for substitution made in the Burke County action after Earl's death. Rule 25(a)(1), N.D.R.Civ.P.,

provides that "[u]nless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party." A formal written statement of the fact of death has not been filed in this case. The 90–day time limit is not triggered until a formal written statement of the fact of death has been filed. *See Tolliver v. Leach*, 126 F.R.D. 529, 530 (W.D.Mich.1989); *Mobil Oil Corp. v. Lefkowitz*, 454 F.Supp. 59, 70 (S.D.N.Y. 1977). Therefore, we conclude that the failure to formally substitute parties did not invalidate that judgment.

■ NDIGA also asserts, and the trial court ruled, that the Burke County judgment is defective because it failed to allocate the $128,000 in damages between Mildred and Earl's estate. According to NDIGA, "[t]here had to be such a differentiation because while an award could be made to Mildred, no award could be made to Earl … because he was deceased and no personal representative was substituted in his place, and therefore, there was no entity or proper party in which to award any damages to for [Earl's] claim." We disagree.

Assuming that no award could be made to Earl's estate because it was not substituted as a party, the trial court, nevertheless, determined that the $128,000 stipulated damage amount was "reasonable" as to Mildred's damages alone. Under this scenario, Earl's estate has effectively been awarded nothing. Mildred, as personal representative of Earl's estate, has even expressed her willingness "to dismiss any claims which the NDIGA may feel are presently outstanding and unresolved on behalf of Earl…."

Even if Earl's estate and Mildred were validly awarded the $128,000 in the Burke

---

**3.** A contract must be interpreted to give effect to the mutual intention of the parties. Section 9–07–03, N.D.C.C. The mutual intention of the parties *is to be ascertained, if possible, from the* writing alone. Section 9–07–04, N.D.C.C. Resort to extrinsic evidence is permissible only in the rare event that the intention of the parties cannot be determined from the writing alone. *See Walle Mut. Ins. Co., supra,* at 180; *Heitkamp v. Milbank Mut. Ins. Co., supra,* at 837. We do not find that extrinsic evidence was either necessary or helpful in ascertaining the mutual intention of the parties in this case.

County judgment, the maximum amount that can be recovered by both Earl's estate and Mildred together is $128,000. NDIGA is not in any position to complain about the possible rights of Earl's estate to any of the $128,000 damage amount the trial court found reasonable as to Mildred alone. The dispute, if any, is between Mildred and Earl's estate. We find no basis for judicial rejection of the Burke County judgment under these circumstances. *Cf. Bob Useldinger & Sons, Inc. v. Hangsleben*, 483 N.W.2d 495, 500 (Minn.Ct.App.1992) [rejecting claim that *Miller v. Shugart* settlements were unenforceable because they covered all the insureds but did not allocate the damages among the insureds]. While it would have been preferable to allocate the damages between Mildred and Earl's estate, the failure to do so here has not prejudiced NDIGA. Any clarifications of the judgment obligation may be resolved upon remand.

■ NDIGA asserts that these proceedings are defective because Oyen, the bus driver and employee of SCR, was dismissed from the case before the Burke County judgment was entered. NDIGA relies on *Horejsi by Anton v. Anderson*, 353 N.W.2d 316, 318 (N.D.1984), where this court held that the release of a servant for his wrongful conduct also releases the master from vicarious liability. But here, Oyen did not receive a full and final release discharging him from all further claims arising out of the incident. Rather, Oyen was dismissed from the action "without prejudice." A dismissal " 'without prejudice,' means that no right or remedy of the parties is affected, the use of the phrase simply shows that there has been no decision of the case upon the merits, and prevents the defendant from setting up the defense of res adjudicata." *Olson v. Coalfield School Dist. No. 16*, 54 N.D. 657, 210 N.W. 180, 181–182 (1926).

NDIGA also asserts that the *Miller v. Shugart* judgment is unenforceable "because it was not a properly entered judgment under North Dakota law or rules of procedure." NDIGA contends that the procedure regarding confession of judg-ments under Rule 68(c), N.D.R.Civ.P., was not followed, that the procedure for entry of a default judgment under Rule 55(a), N.D.R.Civ.P., was not followed, and that, because there was no hearing on the merits of the damage claim before a judge or jury, the "judgment was not entered upon a verdict either."

In *Miller v. Shugart, supra*, at 735, the Minnesota Supreme Court recognized that the judgment did not comply with Minnesota procedural rules, referred to it "as a judgment on a stipulation," and upheld its validity, reasoning that fraud or collusion in the settlement, and the reasonableness of the settlement, could always be tested in a subsequent proceeding to enforce the judgment against the insurer.

"In these circumstances, while the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Id.*

The court determined that the insureds did not have to wait until the insurance coverage issues raised by the company had been decided before settling with the claimant.

NDIGA has not provided persuasive reasons why we should reject this well considered Minnesota analysis. There is no evidence in the record that the settlement agreement was obtained through fraud or collusion. The record supports the trial court's determination that the $128,000 settlement amount was reasonable as to Mildred, without even including Earl. We conclude that the Burke County judgment should be enforced against NDIGA.

We have considered the other arguments raised and they do not affect our decision. We reverse the judgment of the district

court and remand for entry of judgment declaring that the $128,000 Burke County judgment is enforceable against NDIGA, subject to allocation of damages between the plaintiffs, or dismissal of the claims of the plaintiff Earl Sellie in the Burke County action.

ERICKSTAD, C.J., and MESCHKE, J., concur.

VANDE WALLE and LEVINE, JJ., concur in the result.