**DILLINGHAM CORPORATION, a Hawaiian corporation, Plaintiff-Appellee,**

v.

**EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, a corporation, Defendant-Appellant.**

No. 73-1244.

United States Court of Appeals, Ninth Circuit.

Sept. 25, 1974.

Ray Mize, Mize, Kriesien, Fewless, Chaney & Kelley, Portland, Or., for defendant-appellant.

Patric J. Doherty, McMurry & Nichols, Portland, Or., for plaintiff-appellee.

Before KILKENNY and SNEED, Circuit Judges, and JAMESON,* District Judge.

## OPINION

JAMESON, District Judge:

Plaintiff-appellee Dillingham Corporation (Dillingham), brought this diversity action for indemnity against defendant-appellant, Employers Mutual Liability Insurance Company of Wisconsin (Employers), for damages and attorney fees incurred in the defense and settlement of an action brought by William Simpson, an employee of Albina Engine & Machine Works (Albina), a division of appellee, against Matson Navigation Company (Matson), in which Dillingham was impleaded. The case was submitted to the district court on stipulated facts and exhibits. The court found in favor of appellee, and judgment was entered against appellant for the amount of the settlement, with interest, costs and attorney fees.

*Insurance Policies Issued to Dillingham*

Employers issued an insurance policy to Dillingham for the period July 1, 1968 to July 1, 1969. Coverage A provided Workmen's Compensation coverage. Coverage B provided Employer's Liability coverage in the maximum amount of $50,000 as follows:.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom,

(a) sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured . . . ."

Exclusion (c) provides that this policy does not apply:

"under coverage B, to liability assumed by the insured under any con-

---

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

tract or agreement, but this exclusion does not apply to a warranty that work performed by or on behalf of the insured will be done in a workmanlike manner . . ."

Continental Insurance Company (Continental) insured Dillingham under a general liability policy for one year beginning January 1, 1969 in the maximum of $500,000. This policy provided, *inter alia,* the following coverage:

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay because of Bodily Injury, Personal Injury or Property Damage caused by or resulting from an occurrence as hereinafter defined."

Exclusion (b) provides that the policy does not apply:

"(b) to bodily injury, sickness, disease or death of any employee of the Insured arising out of and in the course of his employment by the Insured, but this exclusion does not apply to

"(1) . . .

"(2) liability of others assumed by the Insured under any contract or agreement other than an implied warranty or written warranty under a contract to provide service in a workmanlike manner."

Thus the two policies "dovetail": Employers provided coverage for claims arising out of a breach of express or implied warranty of workmanlike service; and Continental provided coverage for claims arising out of express hold harmless clauses and indemnity agreements.

### Simpson Accident and Personal Injury Claim

On May 26, 1969, William Simpson, an employee of Albina, was injured while working aboard a vessel owned by Matson. On May 27, 1969 Albina noti-

fied Employers of the accident. Employers commenced compensation payments under coverage A on June 9, 1969.[1]

On May 6, 1970 Simpson brought a third-party action against Matson for unseaworthiness and negligence. On June 19, 1970 Matson tendered the defense of the case to Albina. On June 22 Albina's counsel wrote to Frank B. Hall & Co., insurance agent for Employers and Continental, requesting that Matson's tender of the defense to Albina be forwarded to the appropriate underwriter. On June 24, 1970 Hall advised Albina's counsel that the coverage was with Continental because of a work order issued by Matson dated April 29, 1969.[2]

### Impleader of Dillingham

On September 8, 1970 Dillingham was impleaded in the action instituted by Simpson on Matson's claim that it was entitled to indemnity for any liability it might have to Simpson on the basis of Albina's alleged breach of an express and implied warranty of workmanlike service. On November 17, 1970, Portland Stevedoring Company was impleaded as a third party defendant. On November 30 Matson filed a third-party complaint against Dillingham, and Dillingham filed a third-party complaint against Portland Stevedoring Company.

On November 9, 1970 Employers gave Simpson's lawyer notice of its subrogation claim and lien for compensation and medical payments made to Simpson.

### Tender of Defense and Employers' Rejection

It was later determined that the work order of April 29, 1969 covered work prior to May 26, 1969 and was for a different voyage. Another work order had been issued on June 10, 1969 covering the work aboard the Matson vessel between May 26 and May 30, 1969. A

---

1. Employers made no investigation of the facts of the accident, although it knew the accident occurred aboard a vessel owned by Matson.

2. As noted *infra,* it was determined later that this work order was for work on a prior voyage and did not cover work performed on May 26, 1969.

copy of this order was sent to Continental on January 21, 1971.

On January 26, 1971 Dillingham's counsel received from Continental a xerox copy of the June 10, 1969 work order. By letter dated February 11, 1971 Dillingham's counsel advised Employers that Continental had erroneously accepted defense of the Simpson suit in the belief that the work had been undertaken pursuant to a written contract of indemnification, whereas in fact the order was dated "some 15 days after the accident." The letter reads in part:

"The work was therefore performed under an oral undertaking and included the implied warranty of workmanlike performance imposed by the Admiralty common law. This loss therefore falls within Coverage B of the Workmen's Compensation policy in effect on May 25, 1969 issued by your company in favor of Albina Engine & Machine Works.

"On behalf of Albina Engine & Machine Works and its underwriter Continental Insurance Co., we tender the defense of this case and request that you assume the defense and costs thereof, including court costs and attorneys fees, from the date of filing of the Third Party Complaint against Dillingham Corporation by Matson Navigation Co. For your reference we enclose a copy of William Simpson's Complaint against Matson Navigation Company and Matson Navigation Company's Third Party Complaint against Dillingham Corporation and Dillingham's Third Party Complaint against Portland Stevedoring Co."

On February 15 Dillingham's counsel wrote a second letter to Employers enclosing copies of interrogatories. On February 22 they wrote a third letter requesting advice as to whether Employers wished them to continue with the defense of the case or turn the file over to new counsel. On February 23 Employers wrote as follows:

"This letter will acknowledge yours of February 11 and February 22, 1971.

We herein wish to advise that we are refusing your tender of defense in the above captioned matter. Towards any further claims along this line, we will raise the affirmative defense of estoppel by laches."

### Settlement of Simpson Suit

On April 21, 1971 Dillingham's counsel informed Employers by letter that a tentative settlement of the Simpson case for $28,156.44 had been reached. Contributions from Matson and Portland Stevedoring Company totaled $6,631.19, leaving a net cost to Dillingham of $21,525.15 plus attorney fees and costs. Employers was given an opportunity to object to the reasonableness of the settlement, but made no response. On August 6, 1971 counsel for Dillingham advised Employers that settlement had been effected and that Dillingham had paid $21,525.15 and incurred $3,000.04 in legal fees.[3] Dillingham demanded indemnity from Employers. Employers made no response and this action was filed on August 18, 1971.

### Proceedings in District Court

Pursuant to stipulation and order certain legal issues were decided prior to trial. On May 26, 1972 the district court entered an order that Employers was "limited, in defending this action, to the sole ground upon which it rejected plaintiff's tender of defense, namely, estoppel by laches."

In an opinion filed November 17, 1972[4] the district court held that (1) Dillingham was not estopped by laches; (2) Continental was not the real party in interest; and (3) Employers and Continental insured different risks, and proration accordingly was not available.

---

3. The settlement was paid by Continental upon a written loan receipt from Dillingham.

4. The opinion constituted findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

## Contentions of Appellant

Appellant contends that: (1) under the doctrine of relation back, the written order of June 10, 1969 was controlling; (2) Matson's right of indemnity against appellee was covered under Continental's policy; (3) appellant is not limited in its defense to estoppel by laches; (4) appellee was in fact guilty of laches; and (5) the two policies of insurance were repugnant, and Matson's claim therefore was subject to proration.

We conclude that the district court was correct in limiting appellant's defense to estoppel by laches and in holding that appellee was not guilty of laches and the insurance policies were not repugnant but covered different risks.

## Limitation of Defenses

■ Under Oregon law when an insurer denies liability upon a specific ground, other grounds of forfeiture then within its knowledge are waived. "Good faith" requires an insurer to apprise the insured "fully of its position, and, failing to do this, * * * [the insurer] is estopped from asserting any defense other than that brought to the notice of the plaintiff." Ward v. Queen City Fire Insurance Co., 69 Or. 347, 138 P. 1067, 1069 (1914).[5]

Employers does not dispute this general rule, but argues that it is not applicable. It contends that (1) its rejection of the defense was not limited or placed upon specific grounds and (2) in the pretrial order it raised defenses other than laches.

We cannot accept Employers' contention that its letter of rejection applied only to any "future claim" which might be asserted with respect to the Simpson suit. Employers was fully aware of the accident and the nature of its coverage and that of Continental. Nevertheless, in "refusing the tender of defense", it specified only "the affirmative defense of estoppel by laches". Had Employers intended to rely upon its present contention that there was no coverage, it would have been very simple to include that defense in its rejection letter. In our opinion the only reasonable interpretation of that letter is that it constituted notice to Dillingham that Employers was rejecting the tender of the defense because it considered Dillingham barred by the doctrine of laches from ever asserting its claim against Employers.

■ The pretrial order containing appellant's contentions with respect to other possible defenses upon which it would rely at the trial was not made until a year after Employers' letter rejecting the tender of defense. Thus, a timely and full appraisal of its position was not made by Employers to Dillingham. Following Oregon law as expressed in *Ward,* we conclude, as did the trial court, that Employers is limited to the defense of estoppel by laches.

## Estoppel by Laches

■■ The Supreme Court of Oregon has outlined the four elements which must be established before laches will bar a claim: (1) full knowledge of all the facts by the claimant, (2) with a concurrent unreasonable delay, (3) resulting in such substantial prejudice or injury to the defendant (4) as to make enforcement of the claim inequitable. Willis v. Stager, 257 Or. 608, 481 P.2d 78, 83–84 (1971). To prevail in its defense of estoppel by laches, Employers had the burden of proving each of those elements. Hanns v. Hanns, 246 Or. 282, 423 P.2d 499, 511 (1967); McIver v. Norman, 187 Or. 516, 205 P.2d 137, 213 P.2d 144, 153 (1949). Employers has failed to sustain this burden of proof.

■■ The trial court concluded that appellee did not have the full knowledge essential to the defense of laches. The court found that Dillingham reasonably believed that the work done by Simpson was performed pursuant to a written

5. In a diversity case, this court must follow the law of the state in which the complaint was filed. Franklin Supply Co. v. Tolman, 454 F.2d 1059, 1075 (9 Cir. 1972). Decisions of the Supreme Court of Oregon are therefore controlling here.

work order.[6] Given the similarity between the work order of April 29, 1969 which was mistakenly thought to cover Simpson's work and the work order of June 10, 1969, we conclude that there was substantial evidence to support the finding that Dillingham's lack of knowledge was not a result of its own negligence or lack of diligence. Winn v. Shugart, 112 F.2d 617, 622 (10 Cir. 1940).[7]

Laches does not start to run until the insured has "full knowledge of the facts." Willis v. Stager, *supra*, 481 P.2d at 84. Dillingham did not have such knowledge until January, 1971. It tendered the defense to Employers less than one month later. This delay was not "unreasonable". Even were the delay held to cover the five month period between the impleadings of Dillingham and the tender of defense to Employers, under these circumstances we would still conclude, as did the district court, that the delay was excusable.[8]

█ The district court also resolved the question of "substantial prejudice or injury" against Employers. This too involved a factual determination. Again, we conclude that substantial evidence existed to support the court's finding. Employers was aware of the injury sustained by Simpson. It was informed of the Simpson accident on May 27, 1969 and began making compensation payment under "Coverage A" of its policy on June 9, 1969. It knew that a potential claim existed under "Coverage B" in the absence of a valid work order agreement; yet it made no investigation of the accident.

Furthermore, Employers was tendered the defense of the action two and one-half months prior to the trial date. As the district court found, "a period of this length may well have been sufficient", and in addition, "had a continuance been requested, it, in all likelihood, would have been granted". We agree with the district court that Employers failed to establish substantial prejudice by the delay.

In summary, Employers failed to establish the essential elements of laches. The lower court correctly concluded that Dillingham's claim was not barred by laches.

### Repugnance of Policies—Proration

█ Having concluded that the appellant was limited to the defense of estoppel by laches and has failed to establish that defense, the only remaining issues requiring determination is Employers' contention that, if found liable, it is entitled to prorata contribution from Continental. Employers relies on the holding in Lamb-Weston Inc. v. Oregon Auto Insurance Co., 219 Or. 110, 341 P. 2d 110, modified 219 Or. 130, 346 P.2d 643 (1959), that where two insurance policies cover the *same loss* and each policy contains a clause limiting the insurer's liability if other insurance is available to pay for the loss, the clauses are repugnant and are to be rejected in toto. The loss is then to be prorated between the different insurers. The *Lamb-Weston* doctrine, however, is not applicable. While the Employers and Continental policies contain "other insurance" clauses, they do not cover the same loss. Rather they are mutually exclusive. Employers is therefore not entitled to contribution from Continental.

---

**6.** An affidavit of Albina's employee in charge of ship repair recites that in June, 1970 he instructed his personnel to furnish Albina's insurance broker any written work order issued by Matson covering work performed on May 26, 1969. The work order of April 29, 1969 was furnished because it was the "only work order issued prior to May 26, 1969" covering work on the vessel. They did not discover that this work order covered a prior voyage until shortly prior to January 21, 1971.

**7.** There is substantial evidence to support all of the findings of the district court, and we cannot say that any of them are clearly erroneous. Hellman v. Colonial Ins. Co., 475 F.2d 1061, 1062 (9 Cir. 1973).

**8.** Appellant cites numerous cases holding that undue delay in giving an insurer notice of a claim against the insured may constitute laches. None of those cases, however, mirror the factual situation involved here.

*Attorneys' Fees*

 Dillingham has applied for an award of $2,960.00 for attorneys' fees incurred in this appeal if it should prevail. In open court, counsel for the parties agreed that the sum requested was reasonable. Pursuant to the Oregon attorney fee statute, ORS 743.114 which is applicable to appeals in this court (State Farm Mutual Automobile Insurance Co. v. Brewer, 406 F.2d 610, 615 (9 Cir. 1968), we grant appellee's application for attorneys' fees in the sum requested.

Affirmed, with allowance of costs and attorney fees in the amount of $2,960.00.

Oakes, Circuit Judge, filed dissenting opinion.