**BROWNSDALE COOPERATIVE ASSOCIATION, Respondent,**

v.

**HOME INSURANCE COMPANY, Appellant.**

No. C7–91–220.

Court of Appeals of Minnesota.

July 23, 1991.

Review Denied Sept. 25, 1991.

Bryan J. Baudler, Baudler, Baudler, Maus & Blahnik, Austin, for respondent.

Seth M. Colton, John D. Norquist, Maun & Simon, Saint Paul, for appellant.

Considered and decided by KLAPHAKE, P.J., and LANSING and DAVIES, JJ.

## OPINION

LANSING, Judge.

In an appeal from a declaratory judgment action enforcing a *Miller–Shugart*-type settlement, Home Insurance Company contests the trial court's finding of policy coverage and, based on lack of notice, challenges the enforceability of the settlement agreement. We conclude that the record supports the finding of coverage and hold that because Home breached its duty to defend its insured, it was not entitled to notice of the settlement.

## FACTS

Conger Construction Company, Inc. built a four-silo grain storage facility for Brownsdale Cooperative in 1979. In the spring of 1982, the co-op discovered that 100,000 bushels of grain stored in the silos had been destroyed or badly damaged. The co-op filed suit against Conger, alleging negligent failure to install heat sensor cables and to provide adequate ventilation.

Home Insurance Co., which provided Conger with general liability insurance coverage from July 1, 1978, to October 1, 1981, retained counsel to defend Conger. Over the course of six years, counsel deposed witnesses, obtained expert evaluation of the co-op's claimed damages, and prepared for trial.

Two months before trial, Home concluded that the damage to the grain occurred after its policy coverage ended in October 1981 and withdrew from Conger's defense.

United States Fidelity & Guaranty (USF & G), Conger's insurer after October 1, 1981, assumed Conger's defense and retained new counsel. After examining the case file, discussing the experts' assessments of damages with previous counsel, and consulting with Conger, new counsel entered settlement negotiations with the co-op.

Without notifying Home, Conger and the co-op reached a *Miller–Shugart*-type settlement agreement. Conger agreed to entry of judgment against it for $174,000, plus costs, disbursements, and prejudgment interest, and to assign to the co-op its causes of action against Home for wrongful denial of coverage and refusal to defend. In return, the co-op agreed to release Conger from liability and to seek satisfaction of the judgment from Home.

After entry of judgment against Conger, the co-op brought a declaratory judgment action against Home to enforce the judgment. Home denied coverage and claimed that the settlement was unenforceable on three grounds: (1) Home did not receive notice; (2) the settlement amount was unreasonable; and (3) the settlement was the product of fraud and collusion.

At trial, five co-op employees testified about the silos' defects, the effects of those defects on the grain, and the times at which grain was deposited and removed from the silos. For the limited purpose of determining whether the settlement was reasonable, the trial court admitted expert testimony on damages, including deposition testimony by the co-op's expert.

The trial court found coverage under the Home policy, concluding that the grain spoilage was due to Conger's negligent construction and that substantially all of the spoilage occurred before October 1, 1981. The trial court also found that the settlement was reasonable; that there was no evidence of fraud; and that because Home abandoned Conger, it was not entitled to notice of the settlement agreement.

The trial court calculated that grain deposited in the silos in 1979 constituted 25% of the co-op's loss, or $43,500, and grain deposited in 1980 constituted 75% of the co-

op's loss, or $100,000. Applying the policy's annual total liability limit of $100,000, the court offset $38,985 in payments already claimed under the 1980–81 policy, and found Home liable for $104,515 plus costs, fees, disbursements, and prejudgment interest.

## ISSUES

1. Did the trial court err in finding that the damage to the grain occurred before October 1, 1981 and was therefore covered under the Home insurance policy?

2. Did the trial court err in enforcing the *Miller–Shugart*-type settlement agreement, finding that Home was not entitled to notice, the settlement was reasonable, and it was not the product of fraud and collusion?

3. Did the trial court err in admitting deposition testimony on damages to determine the reasonableness of the settlement?

## ANALYSIS

### I

■ Before addressing the enforceability of the settlement agreement, the trial court found coverage under the Home policy. *See Economy Fire & Casualty Co. v. Iverson*, 445 N.W.2d 824, 827 (Minn.1989). This finding is supported by the evidence and is not clearly erroneous. *See Farmers Ins. Group v. Hastings*, 366 N.W.2d 293, 294 (Minn.1985) (factual determinations affecting coverage will not be overturned unless clearly erroneous).

The record supports the trial court's finding that the grain damage occurred before October 1, 1981, "during the policy period." The weight of the testimony established that grain was placed in the silos at the end of the 1979 and 1980 seasons, completely filling the facility, and that improper ventilation and heat detection were present from the time of construction. From this evidence, the trial court could reasonably find that grain deposited in 1979, about 25% of the loss, spoiled between July 1, 1979 and July 1, 1980, and that grain deposited in 1980, about 75% of the loss, spoiled between July 1, 1980 and July 1, 1981.

Although some of the trial testimony was impeached by previous deposition testimony, the witnesses affirmed that their trial testimony, not the deposition testimony, was accurate. Because the trial court had the advantage of fully hearing the testimony, observing the witnesses' demeanor, and weighing the witnesses' statements against inconsistent deposition testimony, we defer to the trial court's findings. *See* Minn.R.Civ.P. 52.01; *Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777, 779 (Minn.1989).

### II

■ A settlement agreement in which an insured stipulates to a money judgment in favor of a plaintiff and the plaintiff releases the insured from personal liability is enforceable against the insurer if (1) the insurer receives notice of the agreement; (2) the agreement is reasonable; and (3) the agreement is not the result of fraud or collusion. *See Miller v. Shugart*, 316 N.W.2d 729, 732–33 (Minn.1982). Because Conger did not notify Home of the agreement, Home argues that the settlement is unenforceable. We conclude that because Home breached its duty to defend Conger, Conger was entitled to reach a reasonable, good faith settlement without notifying Home.

Home had a contractual duty to defend Conger against any claims arguably occurring during the scope of its coverage. *See Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn.1979). Although the appropriate response to a coverage dispute was to continue to defend Conger and to bring a declaratory judgment action to determine coverage, *see Miller*, 316 N.W.2d at 733; *Prahm*, 277 N.W.2d at 391 n. 2, Home denied coverage and abandoned Conger two months before trial.

Home's breach of its duty to defend released Conger from its reciprocal duty to cooperate with Home and left "the entire control and conduct of the litigation" with Conger. *See Butler Bros. v. American Fidelity Co.*, 120 Minn. 157, 164, 139 N.W. 355, 357 (1913). Accordingly, Conger was

entitled to protect itself from personal liability by entering a reasonable, good faith settlement without notifying Home. *See id.; see also Coblentz v. American Surety Co.*, 416 F.2d 1059, 1062–63 (5th Cir.1969); *State Farm Mutual Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 200–01, 593 P.2d 948, 950–51 (Ct.App.1979); *Shook v. Allstate Ins. Co.*, 498 So.2d 498, 500 (Fla.Dist. Ct.App.1986); *pet. for rev. denied*, 508 So.2d 13 (Fla.1987); *Texas United Ins. Co. v. Burt Ford Enterprises*, 703 S.W.2d 828, 835 (Tex.Ct.App.1986).

■ Although notice was not required, the settlement must be reasonable and entered in good faith to be enforceable. *See Butler Bros.*, 120 Minn. at 165, 139 N.W. at 36. The reasonableness of the settlement agreement "is not determined by conducting the very trial obviated by the settlement." *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn.1990). Instead, the co-op had to show that a reasonably prudent person in Conger's position would have settled at $174,000, considering the merits of the co-op's claim, the evidence bearing on liability and damages, and the risks of going to trial. *Miller*, 316 N.W.2d at 735.

The only disputed issue for trial was damages, and the crucial evidence on damages consisted of conflicting expert opinion. The co-op's expert estimated damages at $224,000. Applying the same methodology, Conger's expert concluded that $15,-000 to $20,000 was a more accurate amount; however, had Conger's expert applied the methodology he deemed appropriate, he could not testify that the co-op's damages were significantly less than $224,-000.

Given this evidence, a jury *could have* found Conger liable for $224,000, *see Osgood v. Medical, Inc.*, 415 N.W.2d 896, 903 (Minn.App.1987), *pet for rev. denied* (Minn. Feb. 12, 1988), an amount that would have made Conger personally liable for the portion exceeding applicable insurance coverage. Accordingly, a $174,000 settlement that protected Conger from personal liability was not unreasonable.

■ As the trial court concluded, Home failed to produce any evidence of bad faith, fraud, or collusion. *See Miller*, 316 N.W.2d at 734. The inconsistencies between some co-op employee's trial testimony and their deposition testimony does not rise to the level of deliberate misrepresentation of facts. There is no evidence that the attorney defending Conger was furthering USF & G's interests, rather than Conger's, by settling with the co-op.

## III

■ Admitting the deposition of the co-op's expert for the limited purpose of assessing the information available to the parties at the time of settlement was not error. Because the deposition was not admitted to prove the truth of the matter asserted, the amount of damages, it was not hearsay. *See* Minn.R.Evid. 801(c). The existence of the deposition, whether true or not, was relevant to the reasonableness of the settlement and was properly admitted. *See* Minn.R.Evid. 402.

## DECISION

The record supports a finding of coverage under the Home policy. Despite the absence of notice, the reasonable, good faith settlement agreement between Conger and the co-op was enforceable against Home because Home denied coverage and breached its duty to defend Conger.

Affirmed.