D.E.M. and D.J.M., Plaintiffs and Appellees,

v.

Pastor John L. ALLICKSON and Gustaf Adolph Lutheran Church of Gwinner, North Dakota; and Eastern North Dakota Synod of the Evangelical Lutheran Church of America of Fargo, North Dakota; and the Evangelical Lutheran Church of America of Chicago, Illinois, Defendants,

and

North Star Insurance Company, aka North Star Mutual Insurance Company, Garnishee and Appellant.

Civil No. 960054.

Supreme Court of North Dakota.

Nov. 18, 1996.

Stephen F. Rufer (argued), of Pemberton, Sorlie, Sefkow, Rufer & Kershner, Fergus Falls, MN and Edward F. Klinger (argued), of Gunhus, Grinnell, Klinger, Swenson & Guy, Fargo, for plaintiffs and appellees.

Steven L. Marquart (argued), of Cahill & Marquart, Moorhead, MN, for garnishee and appellant.

NEUMANN, Justice.

North Star Insurance Company [North Star] appeals from a district court judgment concluding North Star had a duty to defend and indemnify its insured, Gustaf Adolf Lu-theran Church of Gwinner [Church], in a tort action for pastoral sexual misconduct. We affirm.

Pastor John Allickson served as pastor of the Church. D.E.M. ["Donna Martin," a pseudonym] and her husband, D.J.M. ["David Martin," a pseudonym], were members of the Church. In late 1987, Donna experienced serious medical problems. Donna claimed that, when she consulted Pastor Allickson for spiritual guidance and counseling, he made sexual advances toward her, culminating in a sexual relationship that continued until 1989.

At all relevant times, the Church was insured by North Star. The coverage section of the policy provides:

"I. The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"bodily injury or

"property damage...."

The policy defines "bodily injury":

"'bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom...."

On March 16, 1991, the Church advised North Star of a possible claim based upon sexual misconduct by Pastor Allickson. By letter dated March 19, 1991, North Star's Assistant Claims Manager, Beth Sneller, responded:

"We received your letter of March 16, 1991 advising that your congregation may be involved in a lawsuit, which if filed will involve a sexual misconduct charge on the part of a former pastor of your congregation.

"In your letter you question what type of coverage might be provided under SMP–6014 for this suit, including the provision of legal defense for a suit brought against you. We must advise that this policy would provide no coverage for a suit charging sexual misconduct of a pastor. You do not give a date of loss as to when this alleged misconduct took place; but the date would not be relevant. The policy

your church has had with our company since 10–1–85 did not at any time provide coverage for this type of claim.

"Your liability coverage under our policy provides coverage for all sums which you become legally obligated to pay as damages because of bodily injury, property damage, or personal and advertising injury. It provides no coverage for damages as a result of sexual misconduct or for your defense if a lawsuit is brought because of such charges."

The policy did not, in fact, include any exclusion for sexual misconduct claims.

In June 1991, the Martins sued Allickson, the Church, the Evangelical Lutheran Church of America [ELCA], and the Eastern North Dakota Synod of the ELCA [Synod] for damages for Pastor Allickson's alleged sexual exploitation of Donna. They alleged claims based upon negligent supervision and respondeat superior against the Church. The complaint also alleged, among other things, that the Martins had suffered "great pain of mind and body" and had incurred "medical and psychological treatment and therapy expenses."

The Church forwarded a copy of the complaint to North Star, and the Church's attorney wrote to North Star asking it to reconsider its determination the policy did not provide coverage "for any allegations relating to sexual misconduct of a pastor." Al Anderson, North Star's Vice President, responded:

"After reviewing the summons and complaint, it is clear that your policy will not be in a position to respond either for defense or indemnity with respect to this claim. In reviewing our file, I note that Beth Sneller, Asst. Casualty Claims Manager, has previously corresponded with you to point out that there is no coverage under your policy for this type of claim.

\*　　\*　　\*　　\*　　\*　　\*

"If you have any questions about any aspect of the coverage of your policy as it relates to this type of occurrence, we would be happy to discuss that with either you or your attorney."

On September 3, 1992, the Church's attorney again wrote to North Star asking it to reconsider its denial of coverage, suggesting North Star take over defense of the action with a reservation of rights. The Church's attorney included a copy of a settlement demand letter from the Martins' attorney, which indicated their claims sought damages for, among other things, "physical and emotional treatment," travel expenses to "health care providers such as ... clinics and hospitals," and long-term "physical effects." North Star responded: "we see nothing in the contents of either your letter ... or [the settlement] letter ... that would relate to coverage under the policy."

After extensive discovery in the underlying action, the trial court dismissed the respondeat superior claims against the Church, the Synod, and the ELCA, and the Martins settled their remaining claims against the Synod and the ELCA. In February 1994 the Church and the Martins entered into a *Miller–Shugart*[1] settlement agreement, whereby the Church stipulated to entry of judgment against it for $300,000, and the Martins agreed to enforce the judgment only against the proceeds of the Church's policy with North Star. The Martins' attorney notified North Star of the settlement by letter dated February 18, 1994.

On May 19, 1994, the Martins served a garnishment summons and notice upon North Star, advising that judgment had been entered upon the *Miller–Shugart* stipulation. In its garnishment disclosure, filed June 9, 1994, North Star for the first time asserted coverage and defense of the claim was being denied because it had not been advised a claim for bodily injury was being made:

"At no time before the stipulation for judgment was signed on February 11, 1994, did Gustaf Adolph Lutheran Church or anyone else ever notify the Garnishee that any claim for 'bodily injury' was being made."

---

1. *See Miller v. Shugart,* 316 N.W.2d 729 (Minn. 1982). The use of *Miller–Shugart* settlements in this State has been recognized in *Medd v. Fonder,* 543 N.W.2d 483 (N.D.1996), *Dundee Mutual Insurance Co. v. Balvitsch,* 540 N.W.2d 609 (N.D. 1995), and *Sellie v. North Dakota Insurance Guaranty Association,* 494 N.W.2d 151 (N.D. 1992).

On July 29, 1994, the Martins served a supplemental complaint upon North Star, seeking judgment of $300,000 plus costs. In its answer, North Star alleged that the Martins' complaint against the Church did not allege bodily injury, again asserting that "at no time before the Stipulation for Judgment was signed ... did [the Church] or anyone else ever notify [North Star] that any claim for 'bodily injury' was being made," and that the settlement was unreasonable.

The trial court granted partial summary judgment determining the allegations in the original complaint were sufficient as a matter of law to allege "bodily injury," and North Star therefore had a duty to defend and indemnify against the claim. Trial was held on the reasonableness of the claim, and the trial court found the settlement was reasonable and enforceable. Judgment was entered against North Star for the amount of the settlement plus costs, and North Star appealed.

## I

■ North Star asserts the trial court erred in concluding North Star had notice the Martins made claims for "bodily injury."

North Star does not assert Donna Martin did not suffer a compensable "bodily injury" under the policy. Nor does North Star argue that "bodily injury" does not include emotional or psychological injuries which have physical manifestations.[2] Instead, North Star argues only that, although Donna's claims would have been covered, North Star was not put on notice a "bodily injury" was claimed. We find it unnecessary to reach that issue because we conclude North Star is estopped from raising insufficiency of notice as a defense to coverage and duty to defend under its policy.

■ Generally, an insurer which denies liability on specified grounds may not subsequently attempt to deny liability on different grounds:

"Where an insurance company denies liability, asserts a defense, or refuses to pay a loss on a specified ground, it waives, or is estopped to assert, other grounds relieving it from liability of which it had full knowledge where insured has acted on its position as announced and suffered resultant detriment, or, as the rule is sometimes more broadly stated, when one specific ground of forfeiture is urged against a policy of insurance, and the validity thereof denied on that ground alone, all other grounds are waived."

46 C.J.S. *Insurance* § 821 (1993) (footnote omitted); *see also* 44 Am.Jur.2d *Insurance* § 1665 (1982); 16C Appleman, Insurance Law and Practice § 9260 (1981).

The rule has been widely followed. *See, e.g., J.C. Wyckoff & Associates, Inc. v. Standard Fire Insurance Co.,* 936 F.2d 1474, 1489 (6th Cir.1991) (applying Michigan law); *First Alabama Bank v. First State Insurance Co.,* 899 F.2d 1045, 1063 (11th Cir.1990) (applying Alabama law); *Luria Brothers & Co. v. Alliance Assurance Co.,* 780 F.2d 1082, 1090 (2nd Cir.1986) (applying New York law); *Dillingham Corp. v. Employers Mutual Liability Insurance Co.,* 503 F.2d 1181, 1185 (9th Cir. 1974) (applying Oregon law); *John Hancock Mutual Life Insurance Co. v. Tuggle,* 303 F.2d 113, 117 (10th Cir.1962) (applying Texas law); *Auto–Owners Insurance Co. v. Rodgers,* 360 So.2d 716, 719 (Ala.1978); *American States Insurance Co. v. McGuire,* 510 So.2d 1227, 1229 (Fla.Ct.App.1987); *Lee v. Evergreen Regency Cooperative & Management Systems, Inc.,* 151 Mich.App. 281, 390 N.W.2d 183, 185 (1986); *Brown v. State Farm Mutual Automobile Insurance Co.,* 776 S.W.2d 384, 386–388 (Mo.1989); *Boren v. State Farm Mutual Automobile Insurance Co.,* 225 Neb. 503, 406 N.W.2d 640, 643 (1987); *Larson v. Occidental Fire and Casualty Co.,* 79 N.M. 562, 446 P.2d 210, 212 (1968), *overruled on other grounds by Estep v. State Farm Mutual Automobile Insurance Co.,* 103 N.M. 105, 703 P.2d 882 (1985); *General Accident Insurance Group v. Cirucci,* 46 N.Y.2d 862, 414 N.Y.S.2d 512, 387 N.E.2d 223, 225 (1979); *Fireman's Fund Insurance Co. v. Freda,* 156 A.D.2d 364, 548 N.Y.S.2d 319, 321 (App.Div.1989); *Council v. Metropolitan Life Insurance Co.,* 42 N.C.App. 194,

---

**2.** There was evidence Donna suffered ulcers, fibrositis, hair loss, and increased asthma attacks as a result of the alleged sexual exploitation by Pastor Allickson.

256 S.E.2d 303, 305 (1979); *Lancon v. Employers National Life Insurance Co.*, 424 S.W.2d 321, 322–323 (Tex.Ct.Civ.App.1968); *Armstrong v. Hanover Insurance Co.*, 130 Vt. 182, 289 A.2d 669, 672 (1972); *Bosko v. Pitts & Still, Inc.*, 75 Wash.2d 856, 454 P.2d 229, 234 (1969).

The rationale for the rule is explained in *General Accident Insurance Group v. Cirucci*, 414 N.Y.S.2d 512, 387 N.E.2d at 225 (citation omitted):

"Although an insurer may disclaim coverage for a valid reason ... the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the [insurer's] responsibility to furnish notice of the specific ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters."

The rule is premised upon the related concepts of waiver and estoppel. The Supreme Court of Missouri distinguished the waiver and estoppel theories in *Brown*, 776 S.W.2d at 386–387:

"As *Brown* states, the general rule announced in the cases is that 'an insurer, having denied liability on a specified ground, may not thereafter deny liability on a different ground.' *Stone v. Waters*, 483 S.W.2d 639, 645 (Mo.App.1972).

\* \* \* \* \* \*

"The rule finds its roots in the doctrines of waiver and estoppel. Classically, estoppel requires '(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act.' *Mississippi–Fox River Drainage Dist. v. Plenge*, 735 S.W.2d 748, 754 (Mo.App.

1987). Waiver is founded upon 'the intentional relinquishment of a known right.' If waiver is 'implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right.' *Shapiro v. Shapiro*, 701 S.W.2d 205, 206 (Mo.App. 1985).

"To state the obvious, waiver and estoppel are different legal doctrines.

"Waiver involves the act or conduct of one of the parties to the contract only. An estoppel involves the act or conduct of both parties to a contract. A waiver ... involves both knowledge and intent. Estoppel may arise when there is no intent to mislead. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position. An estoppel always involves this element.

*"Farm Bureau Mutual Automobile Ins. Co. v. Houle*, 118 Vt. 154, 102 A.2d 326, 330 (1954)."

This distinction between waiver and estoppel may have created some confusion in this case. Counsel for the Martins, in his appellate brief and at oral argument before this court, argued the elements of waiver and estoppel, without labeling them as such. At oral argument, however, counsel stated he was not asserting North Star had waived the "bodily injury" defense by failing to raise it in its original disclaimer of liability and duty to defend. We can only assume counsel, by disclaiming a waiver defense, did not also intend to disclaim the estoppel theory. We cannot imagine counsel intended to raise all of the elements of a valid argument and, in the next breath, discard it. Accordingly, we will resolve this issue on the estoppel theory, and we express no opinion on the validity of a waiver defense on these facts.

This court has long recognized an insurer which disclaims liability on one ground, thereby misleading claimants to their prejudice, may be estopped from raising other grounds for denying liability:

"We think the correct rule is laid down in Cooley's Briefs on Insurance, vol. 3, p. 2681, ...: 'As stated, it is essential that an insurer shall have knowledge of the grounds of forfeiture not relied on in deny-

ing liability on specified grounds, if the action of the insurer is to be regarded as a waiver of the unassigned grounds. And it is also essential that the unassigned grounds be such that they could have been remedied or obviated had the insured known that the insurer intended to rely thereon and that the insured was so far misled or lulled into security by the silence as to such grounds that to enforce them subsequently would be unfair or unjust, as the whole doctrine depends on estoppel, the important feature of which is loss or injury to the other party by the act of the party to be estopped.'"

*Taylor–Baldwin Co. v. Northwestern Fire & Marine Ins. Co.*, 18 N.D. 343, 122 N.W. 396, 401 (1909).

■ The crucial elements of estoppel in this context are the insurer's stated reliance upon one ground for denying liability without stating additional known grounds, and resulting prejudice to the claimant. Both elements are clearly present here.

North Star repeatedly asserted the policy did not provide coverage for sexual misconduct claims, even when asked several times to reconsider its denial of coverage. Not until the Church and the Martins had entered into the *Miller–Shugart* agreement, and North Star had been served with garnishment documents, did North Star advise anyone of its reliance on the alleged failure to give notice of a bodily injury claim. North Star concedes, however, it had knowledge of a potential defense to coverage based upon the lack of a bodily injury claim, and now asserts the bodily injury condition in its policy was the basis for its denial of coverage all along.

Nor is there any doubt the Church was prejudiced by its reliance on North Star's asserted ground for denying coverage. In its answer to the Martins' supplemental complaint, North Star alleged as a defense:

"VII.

"Affirmatively alleges that at no time before the Stipulation for Judgment was signed on February 11, 1994, did Gustaf Adolph Lutheran Church or anyone else ever notify the Garnishee that any claim for 'bodily injury' was being made."

The Church at all relevant times had Donna Martin's medical records and other evidence demonstrating the Martins were claiming damages for physical injuries. Had North Star ever advised the Church it was refusing to provide a defense or coverage because the Martins were not claiming damages for a "bodily injury," the Church could have provided these records to substantiate their request for coverage. Thus, the Church was clearly prejudiced by North Star's failure to apprise it of the true reason for the denial of coverage.

In essence, North Star asks us to sanction the functional equivalent of a "shell game." North Star denied liability and refused to defend on the basis of a non-existent sexual misconduct exclusion to the policy. The Church, abandoned by its insurer, was required to expend sums for attorneys fees to settle the claims. When recovery was then sought from North Star, it disingenuously asserted it was relying all along upon the lack of notice of a claim for bodily injury, which lack of notice the Church could have "remedied or obviated" had it ever been apprised of North Star's secret theory. *See Taylor–Baldwin Co.*, 122 N.W. at 401. Under these facts, it would be grossly unjust and unfair to allow North Star to escape liability upon the unasserted lack of notice.

Having failed to apprise the Church of its reliance upon the bodily injury provision when the Church was in a position to cure the alleged lack of notice, North Star is estopped to raise the alleged lack of notice of a bodily injury claim as a defense to coverage or its duty to defend.[3]

3. Estoppel in this context is different from the estoppel urged in *Medd* and *Sellie*. In those cases, plaintiffs asserted insurers which had wrongfully refused to defend and abandoned their insureds should be estopped from raising any defense to coverage. Following Minnesota law, we concluded an insurer which refuses, for certain reasons, to defend may still contest coverage for those reasons in an action to collect on the stipulated judgment. *See Medd*, 543 N.W.2d at 487; *Sellie*, 494 N.W.2d at 155–156. That issue is distinguishable from the issue presented

## II

■ North Star asserts the trial court erred in enforcing the stipulated judgment against it because it was not given prior notice of the *Miller–Shugart* settlement and the amount of the settlement was unreasonable.

We explained *Miller–Shugart* settlements in *Medd v. Fonder*, 543 N.W.2d 483, 485 (N.D.1996):

> "Under *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), an insured defendant may stipulate for settlement of a plaintiff's claims and stipulate judgment may be collected only from the proceeds of any insurance policy, with no personal liability to the defendant. The stipulated judgment is not conclusive on the insurer. The plaintiff judgment creditor must show the settlement was reasonable and prudent."

In *Sellie v. North Dakota Insurance Guaranty Association*, 494 N.W.2d 151, 155 (N.D. 1992), we stated a *Miller–Shugart* agreement reduced to judgment is enforceable against an insurer if: "(1) the insurer receives notice of the agreement; (2) the agreement is not the result of fraud or collusion; and (3) the agreement is reasonable."

■ North Star contends the settlement agreement is not enforceable because it did not receive prior notice of the settlement. Although in *Sellie* we indicated notice to the insurer is ordinarily required, we also recognized notice is not required if the insurer has refused to defend and has abandoned its insured. *See Sellie*, 494 N.W.2d at 156, discussing *Brownsdale Cooperative Association v. Home Insurance Co.*, 473 N.W.2d 339 (Minn.Ct.App.1991). As explained in *Brownsdale*, 473 N.W.2d at 341, an insurer which denies coverage, refuses to defend, and abandons its insured leaves "the entire control and conduct of the litigation" with its insured and forfeits its right to prior notice of the settlement.

Notice would serve no purpose where the insurer has denied coverage and abandoned its insured. North Star does not argue it would have been entitled to veto or otherwise

here: whether an insurer which specifically disclaims coverage on one ground, causing preju-

affect the settlement if given prior notice. The law does not require idle acts. Section 31–11–05(23), N.D.C.C.

If North Star wanted to retain control of the litigation, it had options available. As noted in *Brownsdale*, 473 N.W.2d at 341, "the appropriate response to a coverage dispute was to continue to defend [the insured] and to bring a declaratory judgment action to determine coverage." North Star made no attempt to litigate coverage, but wholly abandoned its insured on the pretext that the policy provided no coverage for sexual misconduct claims. Under these circumstances, North Star was not entitled to prior notice of the settlement.

■ North Star also asserts the amount of the settlement was not reasonable. We outlined the test for determining reasonableness of a *Miller–Shugart* settlement in *Sellie*, 494 N.W.2d at 159 (*quoting Miller*, 316 N.W.2d at 735):

> " 'In these circumstances, while the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.' "

The Minnesota Supreme Court outlined the procedure for evaluating reasonableness in *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn.1990):

> "The ultimate issue to be decided is the reasonableness of a settlement which avoids a trial. Reasonableness, therefore, is not determined by conducting the very trial obviated by the settlement. Consequently, the decisionmaker receives not only the customary evidence on liability and damages but also other evidence, such

dice to the claimant, may later raise new grounds to challenge coverage.

as expert opinion of trial lawyers evaluating the 'customary' evidence. This 'other evidence' may include verdicts in comparable cases, the likelihood of favorable or unfavorable rulings on legal defenses and evidentiary issues if the tort action had been tried, and other factors of forensic significance. The evaluation of this kind of proof is best understood and weighed by a trial judge."

 Reasonableness of the settlement is a question of fact. *Alton M. Johnson Co.,* 463 N.W.2d at 279. We will not overturn a finding of fact unless it is clearly erroneous, and the complaining party bears the burden of proving a finding is clearly erroneous. *Buzick v. Buzick,* 542 N.W.2d 756, 758 (N.D. 1996). A finding is clearly erroneous if the reviewing court, on the entire record, is left with a definite and firm conviction a mistake has been made. *Buzick,* 542 N.W.2d at 758.

North Star argues the settlement was unreasonable because, as a matter of law, the Church could not have been found liable to the Martins on a negligence theory. North Star asserts the decision in *P.L. v. Aubert,* 545 N.W.2d 666 (Minn.1996), precludes any negligent supervision claim against the Church. In *Aubert,* the Minnesota Supreme Court held that a school district could not be held liable for negligent supervision of a teacher who engaged in sexual contact with a student when it could not have anticipated the behavior or otherwise discovered it through the exercise of reasonable care.

 North Star's argument demonstrates a misconception of the standards applicable in determining reasonableness of a *Miller–Shugart* settlement. The issue presented is whether a reasonably prudent person in the defendant's position would have accepted the settlement. *See Sellie,* 494 N.W.2d at 159.

Implicit in this standard is that we must view the reasonableness of the settlement to someone in the defendant's position at the time of the settlement. *Aubert* was decided in 1996, more than two years after the Church entered into the *Miller–Shugart* settlement. North Star apparently argues the Church should have anticipated this future ruling of another state's court, predicted North Dakota would follow that ruling, and accordingly refuse to settle the claims against it for any amount. At the time of the settlement in February 1994, however, *Aubert* had not been decided and the trial court had denied the Church's motion for summary judgment on the negligent supervision claim. The Church's failure to predict future appellate court rulings of other states certainly has no bearing on the reasonableness of the settlement.[4]

There is ample evidence in this record to support the trial court's finding the $300,000 settlement was reasonable. The Martins' expert witness testified that, based upon his vast experience in these types of sexual misconduct claims, it was his opinion a trial would have resulted in a jury verdict in a range between $25,000 and $1.8 million. There was potential liability on the negligent supervision claim, as well as a possibility of reversal on appeal of the dismissal of the respondeat superior claim. In addition to these risks, the Church was also faced with increased expenses and publicity had the case gone to trial. All of these circumstances factor into the decision whether a reasonably prudent person in the Church's position would have accepted the settlement. *See Sellie,* 494 N.W.2d at 159.

North Star also attempts to argue the settlement was unreasonable because Donna

---

4. In addition, even if *Aubert* had some bearing upon this case it is clearly distinguishable. The underlying basis for the court's holding in *Aubert* was that the school district had absolutely no indication that misconduct was occurring between the teacher and student, and therefore the injury was wholly unforeseeable. The court rejected the plaintiff's theory that sexual contact between teachers and students was a well-known hazard and impliedly foreseeable.

In this case, the Church was aware of possible misconduct. Rumors had spread among Church

members about possible sexual activity between Pastor Allickson and Donna Martin, and a Church employee confronted them about it. When they denied their relationship, no further action or investigation occurred. This is not a case where the plaintiffs rely upon implied foreseeability of sexual misconduct between pastors and parishioners. Rather, the Martins claim the Church was on notice of possible misconduct and did not adequately investigate and respond.

Martin "voluntarily" participated in the sexual affair and attempted to hide the relationship. This is not, however, a mere "spurned lover" case. The gravamen of this type of sexual exploitation case is the blatant abuse of authority and trust, and the accompanying severe emotional trauma to the person exploited. When Donna Martin faced serious medical problems and surgery, she turned to her pastor for spiritual and emotional guidance. He abused his position of trust and responded with grossly inappropriate sexual advances. He than engaged Donna in an extended sexual relationship. It is this egregious abuse of power and trust by one in a special relationship with the exploited person which underlies the seriousness of the misconduct.

We are not left with a definite and firm conviction the trial court made a mistake in finding the settlement was reasonable, and conclude the finding is not clearly erroneous. The judgment is affirmed.

MARING and MESCHKE, JJ., and EVERETT NELS OLSON, District Judge, concur.

EVERETT NELS OLSON, District Judge, sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, dissenting.

I respectfully dissent. I cannot agree there was notice of a claim for "bodily injury" arising from the consentual sexual encounter between Donna and Allickson. The majority opinion says North Star is estopped from raising the issue because it didn't tell the Church "it was relying all along upon the lack of notice of a claim for bodily injury, which lack of notice the Church could have 'remedied or obviated' had it ever been apprised of North Star's secret theory."

The insurance policy covered bodily injury defined by the policy as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom...." I suggest when an insured submits a claim for bodily injury arising from a consentual and ongoing illicit love affair and it is rejected because the policy does not contain coverage for sexual misconduct claims, it is immediately obvious the insurer does not construe the claim to be one for bodily injury as defined in the policy. Here, the claim on its face appears to be one for violating a trust. If a claimant intends to rely on the after effects of the illicit love affair as coming within the definition of "bodily injury," it is incumbent on the claimant to do so by book, line and page. Even then, I have serious doubt that coverage exists. At least, however, it might prompt the insurer to seek a declaratory judgment as authorized by section 32–23–06, NDCC. *See Blackburn, Nickels v. National Farmers,* 452 N.W.2d 319 (N.D.1990). The obvious reason North Star sought no declaratory judgment as to its coverage and duty to defend is because it was so apparent there was no coverage.

Although this liability policy contained no exclusion clause, *compare Northwest G.F. Mut. Ins. Co. v. Norgard,* 518 N.W.2d 179 (N.D.1994) (sexual *molestation* exclusion clause), this was not a sexual molestation case and we do not start with an assumption all acts are covered except as are specifically excluded. A definition of a term in an insurance contract excludes coverage if the language of the contract is clear. *Bjornson v. Guaranty Nat. Ins. Co.,* 539 N.W.2d 46 (N.D. 1995). When the language is unambiguous it should not be strained to impose liability on the insurer. *Id.*

The definition of bodily injury is unambiguous to the extent that emotional and psychological affects of consentual illicit liaisons are not covered, at least absent a specific statement by the claimant as to why they constitute "bodily injury" as defined by the policy.

I would reverse the judgment.